CHICAGO BOARD OF EDUCATION, Petitioner-Appellee, v. VASHTI SMITH, Respondent-Appellant (Illinois State Board of Education *et al.*, Respondents).

First District (2nd Division)   No. 1—94—3237

Opinion filed March 26, 1996.

Witwer, Burlage, Poltrock & Giampietro, of Chicago (Sharon M. Goss, of counsel), for appellant.

Patricia J. Whitten and Kathleen M. Gibbons, both of Chicago Board of Education, of Chicago, for appellee.

JUSTICE SCARIANO delivered the opinion of the court:

The issue in this case centers on whether the proper procedures were observed in the dismissal of respondent Vashti Smith. Smith, a teacher in the Chicago public schools since 1969, was dismissed near the end of the 1990-91 school year. During that year, Smith's principal, Robert A. Kellberg, observed deficiencies in her teaching performance which resulted, on March 6, 1991, in his serving her with an "E-3" notice, informing her that her performance was unsatisfactory.

Some of the deficiencies listed in the "E-3" notice included: failure to record grades in her gradebook; failure to follow the proper time distribution of scheduled lessons; failure to maintain the bulletin board in her classroom; failure to maintain math cards; failure to follow math curriculum; failure to implement her school's home communication policy; failure to implement emergency plan (provides guidance to substitute teachers); failure to implement report cards; failure to keep accurate attendance cards; and deficient lesson plans.

Kellberg had a conference with Smith, at which he provided her with a remediation plan designed to guide her in her efforts to improve her teaching skills, and told her, "read your contract over very carefully—we shall follow it with total fidelity"; he also selected Barbara Moore as Smith's consulting teacher for the remediation process. The remediation period, which is required by the Illinois School Code (105 ILCS 5/24A—1 (West 1994)) (School Code) and the "Teacher Evaluation Plan and Handbook of Procedures" (Handbook), began on March 12, 1991.

After Kellberg conducted at least four observations of Smith and had several conferences with her between March 12 and May 2, and after she participated in consultations with Moore, Kellberg recommended Smith's dismissal to the deputy superintendent of schools in a letter dated May 24, 1991. Kellberg testified that her remediation period ended May 21, 1991. On May 23, 1991, Kellberg met with Smith and informed her that her performance was still unsatisfactory, that the remediation period would not be extended, and that he was going to recommend that she be dismissed. He gave her a document which he had prepared on May 21, 1991, and which stated at the top, "YOU HAVE NOT COMPLIED WITH THE FOLLOWING"; and the remediation plan, "almost verbatim," as Kellberg testified, followed.

Although Kellberg prepared this document on May 21, 1991, on May 23, he visited Smith's classroom and filled out a "Classroom Teacher Visitation" form as required by the Handbook, and on June 13, 1991, he revisited Smith's classroom.

Smith protested her dismissal, and a hearing was held before hearing officer Lawrence Cohen. At the hearing, Kellberg admitted that the collective bargaining agreement (CBA) between the teachers' union and the Board requires that "[d]uring the remediation period, the teacher under remediation shall receive quarterly evaluations (each 45 days) and ratings from the principal." He further testified that the document entitled "YOU HAVE NOT COMPLIED WITH THE FOLLOWING" served as Smith's required evaluation and rating. Moore testified she told Kellberg she did not think that Smith would be able to improve if she were given an extended remediation period.

After Kellberg and Moore testified, the Board rested its case. Smith then moved for a "directed finding"[1] on the ground that the proper visitation forms were not used after the "E-3" was issued, and, more important, for the reason that Smith did not receive an evaluation at the conclusion of the remediation period as required by the Handbook and the School Code. The hearing officer denied the motion, but asked the parties to cover the issue in their post-hearing briefs. Although Smith testified and presented witnesses in her favor, the result we reach in this case makes it unnecessary to go into their testimony.

On October 9, 1992, the hearing officer issued his decision. He found that Smith's dismissal was void because, after Smith was placed on remediation, the Board failed to utilize the "Classroom Teacher Visitation Form" and failed to provide an evaluation at the end of her remediation period:

"Clearly, by not utilizing the Classroom Teacher Visitation Form, even if Kellberg met with Ms. Smith after each visitation, the procedures set forth in the Handbook were not followed. Moreover, and perhaps even more significant, the document given to Ms. Smith at the end of her remediation period did not constitute an evaluation."

The hearing officer based his decision on both the Handbook and the School Code (105 ILCS 5/24A—5 (West 1994)).[2] At the hearing and in post-hearing briefs, the Board argued that the evaluation issued June

---

[1]The record does not disclose, and we fail to perceive, who was to be "directed" by whom to make a finding. We rather believe that in this dismissal proceeding, the motion was actually intended to be one for a finding to be made by the hearing officer in favor of Smith at the close of the Board's case—similar to the procedure delineated in section 2—1110 of the Code of Civil Procedure (735 ILCS 5/2—1110 (West 1994)), "Motion in non-jury case to find for defendant at close of plaintiff's evidence."

[2]The hearing officer cited page 23 of the Handbook: "The remediation

14, satisfied the Handbook and School Code requirements. However, the hearing officer held that the June 14 form did not satisfy the mandated evaluation requirements because it "was tainted by Kellberg's observations on May 23 and June 13, after the end of the remediation period." He further stated that Smith's

> "conduct subsequent to May 21, the end of her remediation period, is not relevant. The request for Ms. Smith's termination, adopted by the Board, was predicated solely on her unsatisfactory performance during the remediation period."

In its post-hearing brief, for the first time, the Board argued that Smith had waived her right to object to errors in the evaluation process because she had failed to comply with section 52.90 of the Illinois Administrative Code (23 Ill. Adm. Code § 52.90 (1994)), which states:

> "Any party who proceeds with the hearing after knowledge that any provision of **this Part** prior to hearing has not been complied with and fails to state his/her objection thereto in writing to the State Board of Education or the hearing officer shall be deemed to have waived his/her right to object." (Emphasis added.) 23 Ill. Adm. Code § 52.90(a) (1994).

According to section 52.20 of the Administrative Code, "This Part [Part 52] applies to the dismissal of tenured teachers, principals, or civil service employees *'for reason or cause'* as delineated in The School Code, Sections 34—15 and 34—85." (Emphasis added.) 23 Ill. Adm. Code § 52.20 (1994). Regarding the waiver issue, the hearing officer reasoned:

> "The language of the statute [*sic*] explicitly refers to 'any provision of this part,' and thereby limits the scope of the waiver provision. Nothing in the language of Section 52.90 indicates an intent to encompass the requirements of the School Code and the Board's remediation procedures. Moreover, it is well established that the doctrine of waiver is narrowly construed and is found only where there is clear and unmistakable evidence of waiver. This is not such a case. The Board had prior notice, when Ms. Smith responded to pre-hearing interrogatories, that she would assert violations of the School Code, the Teacher Evaluation Plan, and the Handbook."

Accordingly, the hearing officer ordered the Board to reinstate Smith and place her on remediation subject to the successful completion of another 45-day remediation period; he did not need, however, to

---

plan shall provide for quarterly evaluations (each 45-days) and ratings"; that two classroom visits "shall" be documented on Classroom Teacher Visitation Forms; and that such forms "will be given" to the teacher.

reach the issue of whether her dismissal was for cause because the procedural defect rendered the dismissal void.

The Board sought judicial review of the hearing officer's decision that Smith did not waive her right to an evaluation. In its July 13, 1993, order, the circuit court reversed the hearing officer, finding that section 52.90 applied to objections to School Code and Handbook procedures, and concluded that Smith waived her right to object to her not receiving an evaluation. The judge therefore remanded the case to the hearing officer for a determination of the issue of whether Smith's teaching was unsatisfactory.

Upon remand, the hearing officer determined that Smith was dismissed for cause under the School Code. Upon review, the circuit court affirmed. This appeal followed.

■ In order for a tenured teacher employed by the Chicago public schools to be dismissed, certain procedural requirements as set forth in the School Code and the Handbook must be met.

> "The Illinois Supreme Court has held that the tenure system gives teachers considerable protection and is designed to provide continuity and stability for students; provide some degree of job security, thus affording teachers the ability to pursue a career free from arbitrary hiring and firing; attract teachers of high quality; and retain experienced teachers." *Dudley v. Board of Education, Bellwood School District No. 88*, 260 Ill. App. 3d 1100, 1105, 632 N.E.2d 94 (1994), citing *Johnson v. Board of Education of Decatur School District No. 61*, 85 Ill. 2d 338, 344, 423 N.E.2d 903 (1981).

The School Code "mandates" that each school district establish a teacher evaluation plan, in this case, the Handbook. *Dudley*, 260 Ill. App. 3d at 1103; 105 ILCS 5/24A—5 (West 1994). Teachers must be evaluated "at least once in the course of every 2 school years." 105 ILCS 5/24A—5 (West 1994). The evaluation "shall include at least": personal observation of the teacher in the classroom on at least two different school days; "consideration of the teacher's attendance, planning, and instructional methods, classroom management, where relevant, and competency in the subject matter taught, where relevant"; a rating of the teacher's performance (either "excellent," "satisfactory" or "unsatisfactory"); a specification of the "teacher's strengths and weaknesses, with supporting reasons for the comments made"; and it requires that a copy of the evaluation be placed in the teacher's personnel file and that a copy be furnished to the teacher. 105 ILCS 5/24A—5(b), (c), (d) (West 1994).

If a teacher is rated "unsatisfactory," a "remediation plan" is developed in order to "correct deficiencies cited," provided that the

deficiencies are remediable. The Handbook requires that an unsatisfactory teacher be provided an "E-3" notice setting forth deficiencies and the rating. According to its remediation plan, Chicago public schools "shall provide for 45 days of school remediation within the classroom," which can be extended. 105 ILCS 5/24A—5(f) (West 1994). The School Code mandates "*quarterly evaluations* and ratings for one year immediately following receipt of an "unsatisfactory" rating. (Emphasis added.) 105 ILCS 5/24A—5(h) (West 1994). The Handbook contains a "Teacher Evaluation Review" form with the word "Required" under the title. According to the Handbook, "[t]he remediation plan shall provide for quarterly evaluations (each 45-days) and ratings." In the case of Chicago schools, "the final decision as to the evaluation shall be done solely by the *** principal or by an assistant principal." 105 ILCS 5/24A—5(h) (West 1994). Furthermore, as noted previously, the CBA also requires evaluations and ratings every 45 days for a teacher under remediation.

A teacher may be dismissed in accordance with School Code section 24—12 or 34—85 if a teacher fails to complete any remediation plan with a "satisfactory" or better rating. 105 ILCS 5/24A—5(j) (West 1994). The Handbook states that if after the initial 45-day remediation period sufficient improvement has not been made, the teacher shall be dismissed in accordance with section 34—85 of the School Code.

As already noted, the hearing officer held that Smith's dismissal was void because she did not receive an evaluation in accordance with the School Code and the Handbook at the end of her remediation period; and for the same reason, he held that she did not waive her right to object to the dismissal. However, again, as we have pointed out earlier, the circuit court reversed the hearing officer and ruled that under the Administrative Code, she did in fact waive her right to object. On appeal to this court, Smith argues that the trial court incorrectly construed the Administrative Code in concluding that she waived that right.

If the hearing officer correctly determined that Smith did not receive an evaluation as mandated under the School Code, the Handbook, and the CBA, the dismissal was void.[3] *Board of Education of School District No. 131 v. Illinois State Board of Education*, 82 Ill.

---

[3]"It has been held that article 24A is designed to promote professional excellence and to establish a statewide minimum-competency level and that the evaluation plans must meet the minimum standards set forth in the School Code." *Dudley*, 260 Ill. App. 3d at 1105, citing *Board of Education, Leroy Community Unit School District No. 2 v. Illinois Educational Labor Rela-*

App. 3d 820, 826, 403 N.E.2d 277 (1980) (The "absence of any evaluation at the conclusion of the [remediation] period made it impossible for the Board to make a reasoned decision"); *Waller v. Board of Education of Century Community Unit School District No. 100*, 13 Ill. App. 3d 1056, 1058, 302 N.E.2d 190 (1973) (Holding that if, upon examination of the record regarding whether steps and procedures required by law were taken, this court finds that there were failures or omissions which substantially affected the rights of the party against whom the proceedings were taken, "it has no choice but to reverse"); see also *Neal v. Board of Education, School District No. 189*, 56 Ill. App. 3d 10, 371 N.E.2d 869 (1977) (Failure to comply with procedural requirements under former section 24—12 of the School Code (an analogous section) renders teacher's dismissal void). Despite the absence of an evaluation, the Board claims, and the circuit court held, that under Illinois Administrative Code section 52.90 (23 Ill. Adm. Code § 52.90 (1994)), she waived her right to raise the issue of her not receiving an evaluation and that, therefore, her dismissal was not void.

■ Regarding the issue of waiver, the Illinois Administrative Code, part 52, as noted above, provides, "Any party who proceeds with the hearing after knowledge that any provision of *this Part* prior to hearing has not been complied with and fails to state his/her objection thereto in writing to the State Board of Education or the hearing officer shall be deemed to have waived his/her right to object." (Emphasis added.) 23 Ill. Adm. Code § 52.90 (1994). Part 52 of the Administrative Code, entitled, "Dismissal of Tenured Teachers and Civil Service Employees Under Article 34," "applies to the dismissal of tenured teachers, principals or civil service employees 'for reason or cause' as delineated in the School Code, Sections 34—15 and 34—85" (23 Ill. Adm. Code § 52.20 (1994)) and includes the procedural requirements which must be followed *after* the principal makes a recommendation to dismiss a teacher.[4]

■ Because we have found no binding authority which interprets

_____

*tions Board*, 199 Ill. App. 3d 347, 362-63, 556 N.E.2d 457 (1990). The parties do not dispute the fact that an evaluation is a mandatory requirement under the School Code, the Handbook, and the CBA.

[4]For example, section 52.35 states that in order to initiate the dismissal of a teacher, there must be: a written motion stating the grounds for dismissal made to the local school board and approved by a majority of the board's membership; service of the notice of dismissal to the teacher within five days; proper notice of the hearing; proper selection of a hearing officer; and proper notification to the hearing officer. 23 Ill. Adm. Code § 52.35 (1994). Section 52.40 contains the qualifications required of the hearing of-

section 52.90, we review this regulation *de novo. Oberman v. Byrne,* 112 Ill. App. 3d 155, 445 N.E.2d 374 (1983).[5] The hearing officer determined that section 52.90, the waiver provision, was limited in scope to the procedures outlined in part 52 and did not extend to the procedural requirements contained in the School Code or the Handbook. We agree. An examination of the plain language of the regulation readily yields the conclusion that it clearly applies only to "any provision of this Part," *i.e.,* part 52; and there is nothing whatsoever therein or anywhere else in the Administrative Code to indicate that it incorporates by express reference or by implication the evaluation and remediation requirements of the School Code or the Handbook. 23 Ill. Adm. Code § 52.90 (1994). We hold, therefore, that the circuit court was incorrect in construing that provision to apply to the remediation process, which includes evaluation; and because Smith did not waive her right to contest the improper evaluation, her dismissal is void.

■ The Board also contends that because the hearing officer's October 9, 1992, determination that Smith did not receive an evaluation was in error, her dismissal is not void. On review, the circuit court did not deem it necessary to go into this holding of the hearing officer. Nevertheless, "in the interest of judicial economy," we are not precluded from reviewing this issue. *Krasnow v. Bender,* 78 Ill. 2d 42, 47, 397 N.E.2d 1381 (1979) (Our supreme court found that it was appropriate to consider the merits of an issue not addressed by the appellate court because the parties briefed the issue and because it would promote judicial economy and conserve judicial resources).

During a remediation period, as explained above, the School Code, the Handbook, and the CBA all require that evaluations and ratings be provided to the teacher after 45 days. 105 ILCS 5/24A—5 (West 1994). The "Teacher Evaluation Review" form included in the

---

ficer, and sections 52.60, 52.70, and 52.80 set forth the prehearing and hearing procedures, such as the rules regarding discovery, the issuance of subpoenas, and the requirement that the hearing officer make a decision in writing within 45 days of the conclusion of the hearing. See 23 Ill. Adm. Code §§ 52.60, 52.70, 52.80 (1994).

[5]An "agency's interpretation [which in this case would include that of the hearing officer] should receive deference because it flows from its experience and expertise." *Board of Education of Du Page High School District No. 88 v. Illinois Educational Labor Relations Board,* 246 Ill. App. 3d 967, 973-74, 617 N.E.2d 790 (1992). See also *American Federation of State, County, & Municipal Employees v. State of Illinois,* 124 Ill. 2d 246, 254, 529 N.E.2d 534 (1988) (A "court's review of an arbitrator's award is extremely limited," and "a court must construe an award, if possible, as valid").

Handbook states "Required" just below the title. Even if the form is not used, the School Code and the Handbook mandate that the evaluation must at least comprehend the items listed in the statute, which we need not repeat here since we have already referred to them earlier in this opinion.

At the end of her remediation period on May 21, 1991, Smith did not receive the "Teacher Evaluation Review" form, nor did she receive a rating. Instead, on May 23, 1991, Kellberg told her that he was recommending her dismissal because she was not successful at remediation, and he handed her a document. According to Kellberg, the document was "an evaluation and rating." However, Kellberg admitted that the May 23 document contained a list of items which was "almost verbatim" those of the remediation plan and were retyped under the title, "YOU HAVE NOT COMPLIED WITH THE FOLLOWING ITEMS." The hearing officer decided that this document did not comply with the requirements of the School Code and the Handbook regarding evaluations and ratings. We agree.

We hold that the hearing officer was correct in so deciding because the May 23 document cannot in any sense of the term be considered an evaluation. It bears reiteration that a proper evaluation requires the inclusion of "at least" the items listed in the School Code. 105 ILCS 5/24A—5 (West 1994). We further hold that the document under discussion incontestably fails to provide the required specification of the teacher's strengths and weaknesses with supporting reasons and fails as well to provide a rating, as is stipulated in the School Code. 105 ILCS 5/24A—5 (West 1994). As a result, it cannot be gainsaid that Smith did not receive the evaluation mandated by the School Code and the Handbook.

■ Despite the fact that Kellberg testified that the May 23 document was his evaluation of Smith, the Board continues to argue that an evaluation that was completed after the remediation period, and which utilized information Kellberg acquired from observations after the end of the remediation period, should be deemed the evaluation. We hold that the hearing officer properly refused to admit the form that the Board advances as the evaluation because it was tainted with information that was obtained after Kellberg recommended her dismissal to the school board, and also because, pursuant to the provisions of the School Code and the Handbook, an evaluation is used to determine whether the teacher placed on remediation should be dismissed, whether she should continue the remediation for another 45 days, or whether she should be relieved of the process. But because this purported evaluation utilized observations from visits occurring after her dismissal was recommended, it clearly did not play a role in

Kellberg's determination to recommend Smith's dismissal; therefore, it was not relevant to the dismissal proceedings before the hearing officer.

For all of the foregoing reasons, we reverse the circuit court's decision and remand with directions to enforce the hearing officer's order of October 9, 1992.

Reversed with directions.

HARTMAN, P.J., and BURKE, J., concur.